## No. 433.

### Mrs. Sarah Richardson *v.* B. H. Dinkgrave, Sheriff et al.

The judge *a quo* did not err in refusing to allow the plaintiff to take a judgment by default on the supplemental petition which had been filed by her, in which she set forth additional reasons why an injunction should issue. The allegations were not sworn to. Admitting that a supplemental petition to an application for an injunction is permissible, which it is not necessary to determine in this instance, still the truth of the allegations in the supplemental petition should be sworn to.

Before proceeding to trial, plaintiff moved that the rule taken upon her by Pargoud, to prove the truth of her allegations in a summary manner, should be considered as an answer. The judge did not err in refusing the motion. Defendant had the right to call upon the plaintiff to verify the truth of her allegations without an answer.

Defendant having testified that he had received account sales for all the cotton which had been sent to him by plaintiff, and that he had delivered the same to his attorneys who were then in court, was asked to produce them. This was objected to by defendant. The objection was correctly sustained under article 140 of the Code of Practice. Besides, there are account sales in the record regarding five hundred and twenty-nine bales of cotton, which is all the cotton received by the defendant from the plaintiff.

The plaintiff's allegations charge the defendant with bad faith and fraud. Under the pleadings these were allegations which it devolved upon her to establish, and if she had not done so, perhaps the defendant might have contented himself with leaving the case where she did, but there is no reason why, if he chose, he should not be allowed to show by positive testimony that such grave charges against his honesty and honor were without foundation. The judge *a quo* did not err in permitting him to do so, and overruling plaintiff's objection to the introduction of such testimony.

On the trial, plaintiff's counsel moved the court to continue the case to enable her to procure her testimony, or that they might be permitted to send for her, she being only a short distance from the courthouse. The judge properly refused and ordered them to proceed. Plaintiff had not been subpœnaed as a witness, and there was no process by which her attendance could have been compelled. If she had intended to be heard in her own behalf, she should have been present to testify when the time came.

The testimony offered by plaintiff to show that other persons than Pargoud had furnished her with supplies and made improvements on her plantation, was properly rejected as irrelevant. It did not follow that the defendant had not done the same for her.

The judge *a quo* did not err in not allowing the defendant to open and close the argument. This right belongs to the plaintiff in injunction. Neither did he err in permitting the plaintiff to call for papers necessary to make out her case, after the entry had been made on the minutes that the testimony was closed. This was a matter entirely within his discretion.

It is false doctrine to say that, where a factor who has made advances to a planter, and who has a mortgage upon his plantation to secure an antecedent debt, receives the crop of the planter, the proceeds of the crop must be imputed first to the payment of the mortgage debt, the residue going to discharge the debt incurred for supplies. The privilege rests upon the crop, and this privilege the crop must first discharge before any part of it may be applied to any other obligation.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Ray*, J. *Morrison & Farmer, D. N. Barrow,* for plaintiff and appellant. *S. P. M. McEnery, K. G. Cobb,* for defendant and appellee.

Morgan, J. Buckner, tutor, was a mortgage creditor of the late J. T. Richardson. So was J. Frank Pargoud. Buckner foreclosed his mortgage. Pargoud bought the property—the Ingleside plantation. This on the fifth September, 1868. On the twelfth November, 1868, Pargoud addressed to the plaintiff the following note:

"Lower Plantation, November 12, 1868.

"Dear Madam—When I purchased the property known as Ingleside Plantation, and belonging to the late J. N. T. Richardson, your husband, I had no other intention but to secure what he owed me. Therefore I take pleasure in informing you that if at once the amount due me, with eight per cent. interest, will be paid by yourself or by any one in your name, the property will be yours again. Hoping this will meet with your approval.

"I am, madam, respectfully and truly yours,

J. FRANK PARGOUD,

Mrs. Sarah Richardson, her plantation."

Mrs. Richardson remained on the plantation, working the same. Pargoud furnishing her the money and supplies necessary thereto.

On the thirtieth October, 1871, Pargoud wrote to Mrs. Richardson, telling her that, in the interest to them, and still more to her daughter, it was time for him to sell to her the Ingleside plantation. His proposition was to sell it for one-half of the debt which it owed him cash, and the balance at twelve months. The debt he states to be between $34,000 and $35,000.

On the ninth November, 1871, he wrote to her again upon the same subject. In this letter he states the indebtedness of the plantation to be $28,406 54, and he proposed to sell it to her for that amount— $10,000 cash and the balance in four notes, payable in one, two, three and four years. In case the cash payment of $10,000 is made, he proposes to deduct the year's interest on $28,606 54, which, he states, will amount to near $2,000.

On the twenty-seventh December, 1871, Pargoud sold to Mrs. Richardson the Ingleside plantation for $28,400. The terms were, one note for $10,400, payable on the first January, 1873, and the balance in four equal annual installments of $4500 each, with interest at eight per cent. per annum from date until paid. To secure the payment of these notes, a mortgage on the property sold was reserved. The first note was not paid at maturity. Pargoud obtained an order of seizure and sale. Mrs. Richardson injoined.

The allegations upon which the injunction issued are, that when Pargoud purchased the Ingleside plantation the debt due to him was $28,000; that before the purchase it was understood and agreed that he should become the purchaser in order to secure to him the payment of his debt; that in accordance with this agreement Pargoud furnished his counter letter, in which the foregoing agreement was acknowledged; that she has paid the debt for which she has been sued; that during the years 1869, 1870 and 1871 she held possession of the property; that she made large crops of cotton and other produce thereon, all of which

was delivered to Pargoud to be applied to the liquidation and payment of the indebtedness, and which, if they had been justly and legally applied, would have canceled and annulled the whole of this indebtedness; that in the years above set forth she delivered to Pargoud about five hundred and seventy bales of cotton, which sold for more than $50,000, all of which was received by him, and which, if legally applied, would have extinguished the mortgages and claims then existing on the property; that Pargoud never furnished her with any detailed account of the manner in which he disposed of her cotton; that on the ninth November, 1871, Pargoud fraudulently and erroneously represented that the indebtedness amounted to $28,406 54, and then proposed to transfer to her the plantation for that amount, which she finally agreed to. She avers that but for fraudulent concealment by Pargoud of the true statement of her accounts, and but for his false representations that the original mortgage claims still subsisted, when in truth they had been extinguished by legal imputation of the funds received by him during the years 1868, 1869, 1870 and 1871, she would not have executed the mortgage, but would have required him to comply with the conditions of his counter letter and to make her a title to the property, and left him to pursue his legal rights for any other indebtedness, or the settlement of any other accounts that might have existed between them; that on these false and fraudulent representations, believing she could not enforce her counter letter on account of the original indebtedness not being paid, she was imposed upon, and consented to secure the said debt of $28,406 54. She avers that a true, just and legal statement of the accounts between Pargoud and herself will show that the amount due by her did not amount to $28,406 54, by fully the amount now sought to be recovered from her, and therefore that her property can not be sold to pay the same.

Pargoud, representing that the injunction was obtained without bond, and that the allegations in the petition therefor were false, took a rule upon the plaintiff to show cause why she should not, within ten days after notice, prove the truth of the allegations contained in her petition in a summary manner. Citation issued as prayed for, returnable on the second day of the following term, general or special, of the court, and after hearing the injunction was dissolved. Plaintiff appeals.

The litigation seems to have been violently contested, and the record comes to us crowded with bills of exceptions, which we proceed to consider.

The judge did not err in refusing to allow the plaintiff to take a judgment by default on the supplemental petition which had been filed by her on the sixteenth August, 1873, in which she set forth addi-

tional reasons why an injunction should issue. The allegations were not sworn to. Admitting that a supplemental petition to an application for an injunction is permissible, which it is not necessary for us now to determine, still the truth of the allegations in the supplemental petition should be sworn to.

Before proceeding to trial, plaintiff moved that the rule taken by Pargoud should be considered as an answer. The judge did not err in refusing the motion. Defendant had the right to call upon the plaintiff to verify the truth of her allegations without an answer.

Defendant having testified that he had received account sales for all the cotton he had received from plaintiff, and that he had delivered the same to his attorneys, who were then in court, was asked to produce them. This was objected to by the defendants. The objection was correctly sustained under article 140 of the Code of Practice. Besides, there are account sales in the record regarding five hundred and twenty-nine bales of cotton, which is all the cotton received by the defendant from the plaintiff.

Defendant was asked: "Did you ever furnish to Mrs. Richardson a detailed account showing how her account stood with you from time to time on your books, and showing the dates, names and items, and amounts, credits and debts, interest and commissions?" To which he answered: "I gave Mrs. Richardson at several times details of what I had purchased for her, according to her orders, and price of the articles. Accounts of merchants in Monroe she had directly from them, I paying the accounts after her order. This is all my answer." He was also asked: "Were these statements of items furnished by you contained in an account showing a succession of charges, debts and credits, or were they in separate statements?" To which he answered: "Whenever any of the goods Mrs. Richardson ordered came, they were delivered to her and at the price sent to her, in order that she might know what they cost; and when they were on separate bills from mine the bills were sent to her, as the goods were landed at some place designated by her in Monroe. As far as I can remember the goods were landed once or twice at Chamberlain's warehouse." Upon each of the foregoing answers being made, counsel for plaintiff moved that the witness be required to answer the questions over, as his answers were not responsive. The judge refused, and we think correctly, as it appears to us that the questions were substantially answered. If plaintiff had wished more categorical answers, the questions should have been more categorical. If she wished to know whether the defendant had furnished her with detailed accounts showing the number of bales of cotton he had received for her account; the price they sold for; what had been done with the proceeds; what commissions had been charged,

etc., it would have been easy to have asked the question, so that the answer would necessarily have informed the court of the fact she desired to elicit.

Defendant was allowed to introduce evidence to prove that he had furnished plaintiff with supplies, paid her personal expenses, taxes, repairs, and improvements on the Ingleside plantation, to the amount of all the cotton he had ever received of the plaintiff. To the introduction of this testimony the plaintiff objected on the ground that he had not alleged the same, and that to allow him to make the proof was taking her by surprise, and deprived her of an opportunity of being prepared with evidence to rebut whatever proof he might adduce, and that this evidence was not offered in rebuttal of anything offered by her.

The plaintiff's allegations are distinct that defendant received cotton belonging to her, and that if the proceeds thereof had been properly applied his debt would have been paid, and he is, in terms, charged with bad faith and fraud. Under the pleadings there were allegations which it devolved upon her to establish, and if she had not done so, perhaps the defendant might have been justified in contenting himself with leaving the case where she did. But we see no reason why he, if he chose, should not be allowed to show by positive testimony that such grave charges against his honesty and honor were without foundation, and we do not think that the judge erred in permitting him to do so.

On the trial plaintiff's counsel moved the court to continue the case until Monday in order to enable them to procure her testimony, or that they might be permitted time to send for her, she being only a short distance from the courthouse. The judge refused and ordered them to proceed. A messenger was dispatched after the plaintiff, but before she reached the courtroom the evidence was closed. To this action of the judge plaintiff reserved a bill. The judge did not err. Plaintiff had not been subpenaed as a witness, and there was no process by which her attendance could have been compelled. If she had intended to be heard in her own behalf she should have been present to testify when the time came—her proximity to the courthouse is no reason why she should have been sent for. The same principle would apply if she had been at the other end of the parish. The question is whether she had the right to have the case postponed in order to give her an opportunity of being heard. She unquestionably had not the right, and the judge did not therefore err in refusing to continue or postpone the case on account of her absence.

Plaintiff offered two witnesses to prove that they had worked on the Ingleside plantation, furnishing materials to the defendant, and to

prove by them' what buildings had been put up by them and what repairs they had made, for the purpose of rebutting the testimony of Pargoud and others with regard to the improvements made upon the place, for which he had paid large sums of money. The judge correctly rejected the testimony. It was irrelevant. They might have done a great deal of work on the plantation, but whatever work they did did not establish the fact that Pargoud had not paid for the improvements which he swears to.

The judge erred in refusing to allow the witness, Scarborough, to testify as to what Pargoud stated to Goodrich with reference to the correctness of the accounts between himself and Mrs. Richardson. But his evidence, if admitted, would not have controlled the case or affected the result, and we will not therefore remand it on that point. Neither did he err in refusing to permit Hilliard and others to prove that they were laborers, working on shares on the Ingleside plantation during the years 1869, 1870, 1871, and that Pargoud furnished them with no supplies. Their testimony, if received, would not have rebutted the testimony of Pargoud that he had furnished the supplies he charged for. The testimony is, that the Ingleside plantation was worked, in part, on shares; part of the land was rented, and part was cultivated with hired labor. Nor do we find any error in the judge's refusal to admit the account of S. Meyer in evidence. It would have had no effect if it had been received. Because the plaintiff procured supplies from Meyers it does not follow that she did not procure them from the defendant also.

Pargoud was asked by plaintiff whether he had not supplied and furnished money, plantation supplies, mules and other things necessary for carrying on a plantation, to Mrs. Wilson, Mrs. Mason, J D. Mc-Enery, J. G. Wilderson, Holmes, Umberly, R. Wilderson and P. Ranson, on the same terms on which he had furnished the Ingleside plantation. The judge did not err in refusing to permit this question to be answered. If answered we do not see that it would have proved anything beyond the fact that the defendant was willing to assist his neighbors. It would not have rebutted the testimony of the defendant that he furnished supplies to the plaintiff. On the contrary, the statement in this regard in the bill seems to be an admission that he did furnish her with supplies, and thus does away with the idea conveyed by her other bills that the defendant did not furnish them.

The judge did not err in not allowing the defendant to open and close the argument. This right belongs to the plaintiff in injunction. Neither did he err in permitting the plaintiff to call for papers necessary to make out her case, after the entry had been made on the minutes that the testimony was closed. This was a matter entirely within his discretion.

*Seriatim,* we have taken up the bills of exception. Having disposed of them, we now turn to the case on its merits.

Pargoud's letter of the twelfth of November, 1868, to Mrs. Richardson, was a proposition to convey to her the Ingleside plantation upon certain conditions. It is evident that Mrs. Richardson accepted the proposition, as she remained in possession of the property. The conditions were that the transfer should be made whenever the debt due thereon to him should have been paid. Matters remained in this state until the thirtieth of October, 1871, when Pargoud wrote to her, telling her that it was best he should sell her the plantation. In this letter he proposed certain terms of sale. On the ninth of November, of the same year, he again wrote to her. In this letter he states the indebtedness of the place to be $28,406 54, and he proposed to sell it to her for that sum, $10,000 to be paid in cash, and the balance in four equal annual installments.

On the twenty-seventh December, 1871 he sold the plantation to her for $28,000, $10,000 payable on the first of January, 1873, and the balance in four equal annual installments. The first note was not paid. Executory process issued upon it. Then came this injunction. Error on the part of the plaintiff, fraud on the part of the defendant, and improper application of her funds, are the alleged grounds upon which the injunction rests.

When Pargoud purchased the Ingleside plantation, the debt due to him, added to the one he controlled, amounted to $27,366. When Mrs. Richardson retained the property under his letter of the twelfth of November, 1868, she appears to have been unable to make the necessary arrangements for getting plantation supplies. Pargoud then came to her assistance and furnished them. This he continued to do for several years. She sent him her cotton, which he sold. The amount received by him exceeded the amount of his debt, and the main theory upon which the plaintiff relies in support of her claim is that the money received by him should have been imputed to the payment of the original debt. In other words, and indeed in almost the terms of her petition, that the mortgage should have been paid out of the proceeds of her crops, leaving whatever sum might be due for the advances which enabled her to make the crops a matter to be settled afterwards. But the parties occupied two positions towards each other. One was that of debtor and creditor, the other principal and factor. The creditor was secured by mortgage; the factor was secured by privilege upon such produce as had been made with the moneys and supplies furnished by him. One debt was secured by a convention; the other was secured by the law, and both were independent one of the other. It is therefore false doctrine to say that, where a factor who has made

42

advances to a planter, and who has a mortgage upon his plantation to secure an antecedent debt, receives the crop of the planter, the proceeds of the crop must be imputed first to the payment of the mortgage debt, the residue going to discharge the debt incurred for supplies. The privilege rests upon the crop, and this privilege the crop must first discharge before any part of it may be applied to any other obligation.

The error complained of is that she was misinformed as to the state of her accounts with the defendant when she agreed to give the price she contracted to give for the plantation. The evidence does not establish this fact. It is in evidence that she had access to the defendant's books, in which her accounts were kept; that she frequently examined them; that such errors as were pointed out by her were corrected. It does not seem to us that after the letter of the ninth November, in which the indebtedness is stated. was received by her, and after she made the purchase for the amount therein stated, with the exception of a few hundred dollars, she can not now say that there was error in the price or her indebtedness.

Neither do we see any evidence upon which to support the allegations of fraud which are contained in the petition. The affirmative of this grave accusation was on the plaintiff, and neither she nor any of her witnesses have established any fact upon which such an allegation could properly rest. The record satisfies us that instead of attempting to despoil the plaintiff, he has been endeavoring to befriend her; offering to convey to her property which he was not bound to convey; furnishing her with money and supplies as she called for them after she had failed to get them elsewhere; selling her the property entirely on credit, and receiving her thanks—as we find them expressed in her letters—until he exacted a performance of her contract. Under these circumstances the district judge did not err when he dissolved the injunction which kept him out of his rights.

Judgment affirmed.

Rehearing refused.